**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

TETRICE BRIANNA MATHEWS,

                           Plaintiff,

                  -against-

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

----------------------------------------------------------------X

22-cv-04756

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge**:[1]

        Plaintiff Tetrice Brianna Mathews brings this action pursuant to 42 U.S.C. § 205(g), as amended, 42 U.S.C. § 405(g), and/or 42 U.S.C. §1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security (the Commissioner), which denied her application for Supplemental Security Income (SSI) benefits under the Social Security Act. (ECF No. 1).  The parties now cross-move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons that follow, Plaintiff's motion (ECF No. 17) is **DENIED,** and the Commissioner's motion (ECF No. 19) is **GRANTED**.

## I.      BACKGROUND

        The following facts are taken from the administrative record ("R.") of the Social Security Administration that was filed by the Commissioner on September 8, 2022.[2]  (ECF No. 12).

### A.  Procedural History

        Plaintiff was born on December 5, 1999.  (R. 48).  On November 17, 2016, an application

---

[1] The parties consented to this Court's jurisdiction for all purposes pursuant to 28 § U.S.C. 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (ECF No. 11).
[2] All references to the record ("R.") refer to the sequentially numbered pages on the bottom right-hand corner of the administrative record filed by the Commissioner.

for SSI was filed on Plaintiff's behalf.  (R. 48, 665).  While that application was pending, on December 4, 2017, Plaintiff attained the age of eighteen.  (*Id*.).  The Commissioner denied Plaintiff's application and Plaintiff requested a hearing.  (R. 8).  A hearing occurred on December 10, 2018, at which Plaintiff, her mother Darlene Phelps, and a vocational expert testified.  (R. 78 – 111).  On February 26, 2019, Administrative Law Judge (ALJ) Sharda Singh denied Plaintiff's claim.  (R. 61).  Plaintiff requested a review to the Appeals Council, which was denied on May 27, 2020.  (R. 1 – 7).  Plaintiff then brought a civil action in the Southern District of New York, which was resolved by stipulation of the parties on August 13, 2021, to remand the case to the Commissioner.  (R. 712 – 720).  While the remanded matter was still pending, Plaintiff filed a subsequent application for disability benefits on July 22, 2020.  (R. 718).  Plaintiff's July 22, 2020, application was granted, and Plaintiff was found to be disabled as of that date.  (*Id*).

On December 6, 2021, pursuant to the remand, a hearing occurred before ALJ Singh in which a vocational expert testified, and Plaintiff relied on her testimony from the prior hearing.  (R. 699 – 711).  On February 14, 2022, ALJ Singh found that Plaintiff was not disabled on or before July 21, 2020, the day before Plaintiff was found to be disabled based on her subsequent SSI application.  (R. 656 – 698).  Plaintiff did not file written exceptions to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner on April 16, 2022.  (R. 657).  On June 8, 2022, Plaintiff filed a complaint commencing this case to challenge the ALJ's decision.  (ECF No. 1).  The relevant period in the case is November 17, 2016, through July 21, 2020, the date before Plaintiff was found disabled pursuant to her subsequent application.  (R. 691).

B.  **Testimonial, Medical, and Vocational Evidence**

Both parties have provided summaries of the testimonial, medical, and vocational evidence contained in the administrative record.  (ECF Nos. 18, 20).  Based on an independent and thorough examination of the record, the Court finds that the parties' summaries of the evidence are largely comprehensive and accurate.  Accordingly, the Court adopts these summaries and discusses the evidence in the record in more detail to the extent necessary to decide the issues raised in this case.  *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *report and recommendation adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## II.     LEGAL STANDARD

A.  **Standard of Review**

This Court "engage[s] in limited review" of the Commissioner's decision.  *Schillo v. Saul*, 31 F.4th 64, 74 (2d Cir. 2022).  The Court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."  *Id*.; *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "The substantial evidence standard is a very deferential standard," *Schillo*, 31 F.4th at 74 (internal quotation marks omitted), and it is not the function of the Court "to determine de novo whether a Plaintiff is disabled."  *Id*.  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  (internal quotation marks omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion

must be upheld." *Id.* "[O]nce an ALJ finds facts, [this Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (internal quotation marks omitted).

However, "where an error of law has been made that might have affected the disposition of the case, this [C]ourt cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration and internal quotation marks omitted). Thus, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.* "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or where "we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation," the Court may remand to the Commissioner for further development of the evidence or for an explanation of the ALJ's reasoning. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal citations omitted).

**B.  Statutory Disability**

If a claimant attains the age of eighteen while their disability application is still pending before the Commissioner, the period before age eighteen is analyzed under regulations that apply to children. *See* 20 C.F.R. § 416.924(f).  For the period after age eighteen, the Commissioner analyzes the claim using different regulations that apply to adults. *Id.*  The relevant standards are more fully described below.

1.  <u>Childhood Standard of Disability</u>

The Commissioner applies a three-step analysis to evaluate whether a person under the age of eighteen qualifies for disability benefits.  20 C.F.R. § 416.924(a)-(d).  To qualify, a person under the age of eighteen must establish the following:

(1) they are not engaged in "substantial gainful activity,"
(2) they have a "medically determinable impairment [or combination of impairments] that is severe," and

4

> (3) these severe impairments "meet, medically equal, or
> functionally equal" the listed impairments.

*Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 83 (2d Cir. 2015) (quoting 20 C.F.R. §

416.924(a)-(d).  An impairment is not severe if it is only a slight abnormality or combination of

slight abnormalities that causes no more than minimal limitations.  20 C.F.R. § 416.924(c).  To

determine whether a severe impairment meets or equals the listed impairments, the

Commissioner evaluates the following six broad domains of functioning:

> (1) Acquiring and using information,
> (2) Attending and completing tasks,
> (3) Interacting and relating with others,
> (4) Moving about and manipulating objects,
> (5) Caring for yourself, and
> (6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(I – vi).  If a child has an extreme limitation in at least one domain of

functioning or a marked limitation in at least two domains of functioning, the Commissioner will

find that the child's impairment meets or equals the listed impairments.  20 C.F.R. § 416.926a(a).

## 2.  Adult Standard of Disability

Under the Social Security Act, an adult claimant is disabled when the claimant lacks the

ability "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A); *Schillo*, 31 F.4th at 69–70.  The claimant is eligible for disability

benefits

> only if his physical or mental impairment or impairments are of
> such severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied
for work.

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Regulations, 20 C.F.R. § 404.1520(a)(4)(i)–(v), set forth a five-step

sequential analysis for evaluating whether a person is disabled under the Social Security Act.

*See Schillo*, 31 F.4th at 70.  "If at any step a finding of disability or nondisability can be made,

the Commissioner will not review the claim further."  *Id.* (alteration and internal quotation marks

omitted).  Under the five-step process, the Commissioner determines the following:

> (1) whether the claimant is currently engaged in substantial gainful
>     activity;
> (2) whether the claimant has a severe physical or mental
>     impairment, or combination of severe impairments;[3]
> (3) whether the impairment (or combination) meets or equals the
>     severity of one of the impairments specified in 20 C.F.R. Part
>     404, Subpart P, Appendix 1 ("Listing of Impairments");[4]
> (4) whether, based on an assessment of the claimant's residual
>     functional capacity (RFC), the claimant can perform any of her
>     past relevant work;[5] and
> (5) whether the claimant can make an adjustment to other work
>     given the claimant's residual functional capacity, age,
>     education, and work experience.[6]

*Schillo*, 31 F.4th at 70 (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)).  "At step three, the

[Commissioner] determines whether the impairment which enabled the claimant to survive step

two is on the list of impairments presumed severe enough to render one disabled; if so, the

---

[3] A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).
[4] Listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing
are found in Appendix 1 to Part 404, Subpart P of the SSA regulations.  20 C.F.R § 404.1520(a)(4)(iii), (d),
416.920(a)(4)(iii), (d).  If the claimant's impairments do not satisfy the criteria of a listed impairment at step three,
the Commissioner moves on to step four and must determine the claimant's residual functional capacity ("RFC").
20 C.F.R. §§ 404.1520(e), 416.920(e).
[5] A claimant's RFC represents "the most [the claimant] can still do despite [their] limitations."  20 C.F.R.
§§ 404.1545(a)(1), 416.945(a)(1).
[6] To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in
the national economy that the claimant, considering his or her RFC and vocational factors, can perform.  20 C.F.R.
§ 404.1560(c).

claimant qualifies." *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  However, "[i]f the claimant's impairment is not on the list, the inquiry proceeds to step four." *Id.* "The claimant bears the burden of proof in the first four steps of the sequential inquiry." *Id.* "In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Id.* "Because the shift in step five is limited, the Commissioner need not provide additional evidence of the claimant's residual functional capacity." *Id.* (internal quotation marks omitted).

## III.   THE ALJ'S DECISION

The ALJ first evaluated Plaintiff's claim pursuant to the three-step childhood analysis. (R. 665 – 681).  At step one, the ALJ found that claimant had not engaged in substantial gainful activity since the application date, November 16, 2017.  (R. 665).  At step two, the ALJ found that Plaintiff had the following severe impairments: "attention deficit hyperactivity disorder, low to average intellectual ability, social anxiety disorder, major depressive disorder, and unspecified schizophrenia spectrum and other psychotic disorder."  (R. 665).  However, the ALJ determined that Plaintiff's impairments did not meet, medically equal, or functionally equal the severity of the listed impairments.  (R. 666 – 681).  Consequently, the ALJ determined that Plaintiff was not disabled prior to attaining eighteen years of age.  (R. 681).

Next, the ALJ evaluated Plaintiff's claim pursuant to the five-step analysis applicable for adults.  (R. 681 – 691).  At step one, as stated above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  (R. 665).  At step two, the ALJ determined that Plaintiff had the following severe impairments: "attention deficit hyperactivity disorder, low to average intellectual ability, social anxiety disorder, major depressive disorder, and unspecified schizophrenia spectrum and other psychotic disorder."  (R. 681 – 682).  At step three, the ALJ concluded that Plaintiff did not have an impairment that met or medically equaled

the severity of one of the listed impairments.  (R. 682 – 686).  At step four, the ALJ found that

Plaintiff had the RFC to perform a full range of work at all exertional levels subject to the

following nonexertional limitations: "[Plaintiff] was limited to understanding, remembering, and

carrying out simple, routine, repetitive, non-complex tasks, with occasional contact with

supervisors, coworkers, and the general public" in a low stress environment.  (R. 686 – 690).  At

step five, the ALJ determined that there were jobs in the national economy that Plaintiff could

perform such as: Labeler, Garment Folder, Sealing-Machine Operator.  (R. 690 – 691).  As a

result, the ALJ concluded that Plaintiff was not disabled between attaining eighteen years of age

and July 21, 2020.  (R. 691).

## IV.   DISCUSSION

Plaintiff argues that the ALJ's decision regarding Plaintiff's residual functional capacity

is not based upon substantial evidence because the ALJ (1) failed to fully develop the record to

supplement the purportedly "vague" medical opinions of Plaintiff's treating sources; (2) failed to

properly assess the weight given to Plaintiff's treating sources; and (3) mischaracterized

evidence from one of those medical sources that concluded Plaintiff suffered from a marked

impairment in social relationships.  (ECF No. 18 at 1, 12 – 17).[7]  As detailed below, the Court

finds that the ALJ's decision is supported by substantial evidence and any legal error that may

have occurred was harmless.

### A.  The ALJ Did Not Fail to Complete the Record.

Plaintiff first argues that because the ALJ concluded that the opinions of Plaintiff's

treating sources were vague because they "failed to adequately identify or define any specific

functional limitations of the claimant" (R. 675), the ALJ had an obligation to recontact the

---

[7] All citations to motion papers filed via ECF refer to the sequential page numbers on the bottom of each page.

providers to obtain clarification.  (ECF No. 18 at 16).  Plaintiff contends that the ALJ's failure to do so constituted a legal error to fully develop the record.  (*Id.*)  The Court disagrees.

As an initial matter, the ALJ was under no obligation to recontact the treating sources. The applicable regulation states that if evidence in the case record is insufficient or inconsistent, the Commissioner "<u>may</u> recontact your medical source."  20 C.F.R. § 416.920b(b)(2).  In fact, the regulation specifically states that the Commissioner "might not take all of the actions" listed therein, including recontacting medical sources.  *Id.*

Moreover, a deficiency in reasoning by a treating physician is not the same as a gap in treatment records that would require further development by the ALJ.  *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022).  In *Schillo*, for example, the plaintiff similarly argued that the ALJ should have obtained clarification from the treating physician, whose statements the ALJ found too vague.  *Schillo*, 31 F. 4th at 76.  The Second Circuit disagreed and found that the ALJ was not required to obtain clarification, because such a "deficiency in reasoning by a treating physician is not the same as a gap in the treatment records."  *Id*.  *Schillo* also stressed that the medical documents in question were complete, and that plaintiff did not identify any missing records.  *Id.* Indeed, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses 'a complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (internal citations omitted).[8]

---

[8] *See also Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (holding that remand was not required because medical record before ALJ was "quite extensive" and that regulations "suggest that remand is not always required when an ALJ fails in his duty to request opinions, particularly where…the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) ("because the ALJ based its RFC determination on Dr. Wolkoff's years' worth of treatment notes, it was not necessary for the ALJ to seek additional medical information regarding Monroe's RFC.").

Here, although the ALJ concluded that the treating physician records contained vague conclusions regarding impairments in social functioning, the ALJ nonetheless had an extensive volume of medical records upon which to base her decision.  The record consists of hundreds of pages of medical records spanning over at least four years.  (ECF Nos. 12, 12-1, 12-2).  These records include multiple treatment plans containing years' worth of "diagnostic impressions/conclusions" in which treating medical sources outline their first-hand impressions. (R. 489 – 655, 886 – 980).  The ALJ also was privy to other pertinent information regarding Plaintiff's abilities and limitations including that she "performed well academically," "was generally able to care for her personal needs" (i.e. including dressing, bathing, and grooming herself), could perform some household chores, had graduated from high school, and had begun attending college.  (R. 690).  Consequently, the ALJ was not required to seek clarification from the treating sources she found vague, nor did she err in choosing not to do so.

**B.   The ALJ Properly Assessed the Weight of the Medical Evidence from Plaintiff's Treating Sources.**

Plaintiff also argues that the ALJ's failure to fully develop the record "is compounded by her failure to properly assess the weight of the opinions as required." (ECF No. 18 at 16).  More specifically, Plaintiff contends that in choosing to give less weight to the opinions of Plaintiff's treating sources, the ALJ failed to consider supportability, consistency, relationship, specialization, and other factors (as set forth in 20 C.F.R. 404.1520c), and failed to adequately explain her rationale, pursuant to Social Security Ruling ("SSR") 96-8p.[9]  (*Id.* at 15).  Plaintiff refers to a portion of the ALJ's RFC analysis in which she discussed four different medical

---

[9] SSR 96-8p states that "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184 at *7 (S.A.A. July 2, 1996).  For the reasons explained in Section IV(B), the ALJ explained her reasons for not adopting a medical statement regarding Plaintiff suffering from marked social limitations and, in any event, the RFC ultimately adopted by the ALJ did not conflict with that medical statement.

sources and accorded them either "some weight" or "little weight" because they were vague. (ECF No. 18 at 15 - 16) (citing R. 689).  As explained below, the Court finds that the ALJ adequately weighed these four medical records, and to the extent any error occurred, it was harmless.

As an initial matter, Plaintiff applies the wrong standard to evaluate the ALJ's analysis of Plaintiff's treating sources.  Plaintiff refers to 20 C.F.R. 404.1520c, which requires the ALJ to explain whether a medical opinion is supported by and consistent with medical evidence. However, this regulation applies to claims filed "on or after March 27, 2017."  *See* 20 C.F.R. 404.1520c.  Because Plaintiff filed her claim on November 17, 2016 (R. 48), her claims are governed by the "treating physician rule," which states that if a treating source's medical opinion is well-supported and not inconsistent with other substantial evidence, it is to be given controlling weight.  20 C.F.R. § 416.927 and 20 C.F.R. § 404.1527 (defining the term "medical opinion" for claims filed before March 27, 2017, and governing how they should be evaluated).[10] *See also Schillo*, 31 F. 4th at 69 ("For claims filed before March 27, 2017, the ALJ's decision must account for the "treating physician rule").

In discussing Plaintiff's RFC, the ALJ refers to four medical records:[11] Ex. 12F at 44 (R. 622); Ex. 13F (R. 630); Ex. 15F at 1, 2, 6 (R. 640, 641, 645); and Ex. 18F at 24 (R. 909).[12]  The

---

[10] Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927; 20 C.F.R. § 404.1527.

[11] This opinion refers to these medical records, as the ALJ does, by their exhibit number (e.g. Ex. 12F) and the internal page number within the exhibit (e.g. p. 44).  This opinion also includes in parentheses the corresponding page number in the record (e.g. R. 622).

[12] Ex. 12F is a fifty-one-page document titled "Treatment Plan" and in the "diagnostic impressions/conclusions" section it states as follows:

> [Plaintiff] is an 18 year old female presenting with Other Specified Schizophrenia
> Spectrum and Other Psychotic Disorder. Symptoms cause clinically significant distress
> and impairment in social, occupational, and other important areas of functioning
> predominate but do not meet full criteria for any of the disorders in the schizophrenia
> spectrum and other psychotic disorders diagnostic class…. Tetrice's symptoms include

parties disagree whether these medical records constitute medical opinions and, therefore, whether the ALJ was required to give any weight to these statements at all. (ECF No. 18 (Plaintiff's Mem.) at 12 - 17) (referring to medical records as medical opinions); (ECF No. 20 (Def's Mem.) at 19) (arguing that statements are not medical opinions because they do not "indicate what Plaintiff can still do despite her impairments").  However, to resolve the parties' motions, the Court need not directly decide this issue.  As discussed below, even if the Court treats all these medical records as medical opinions, the Court still finds that the ALJ appropriately weighed them, and to the extent any error occurred, it was harmless.

SSA regulations and Second Circuit precedent mandate specific procedures to determine the appropriate weight to give a treating physician's medical opinion.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)  The opinion of a treating physician is given controlling weight if that medical opinion is not inconsistent with other substantial evidence in the record and is supported by acceptable clinical and laboratory diagnostic techniques.  *Id.* (citing 20 C.F.R. § 1527(c)(2)).  When an ALJ does not give a medical opinion controlling weight, they are to assess the following factors: (1) length of treatment relationship; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other factors

---

auditory hallucinations impacting her daily living as well as creating and building social relations and/or engaging with others….
(R. 622).

  Ex. 13F is a one-page letter briefly stating that Plaintiff is diagnosed with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder" and then lists Plaintiffs symptoms.  (R. 630).

  Ex. 15F is a seven-page document, like Exhibit 12F, with a "diagnostic impression/conclusions" section that states that Plaintiff has "marked distress in social situations" that "interferes with her ability to move toward appropriate goals."  (R. 640).

  Ex. 18F is a thirty-nine page transfer summary and treatment plan.  (R. 885 – 924).  This statement does not contain an explicit recantation of what Plaintiff can still do but, based on this record, the ALJ did state that Plaintiff's anxiety and rigidity with respect to her daily routine interfere with her family relationships and daily life. (R. 689, 907, 909).

which tend to support or contradict the medical opinion. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. §

1527(c)(2). The Second Circuit articulates these factors as follows:

> (1) the frequency, length, nature, and extent of treatment;
> (2) the amount of medical evidence supporting the opinion;
> (3) the consistency of the opinion with the remaining medical
>      evidence; and
> (4) whether the physician is a specialist.

*Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019).  If the ALJ fails to properly apply

these factors, that is a procedural error.  *Id.*  However, the Second Circuit has explained

that a "slavish recitation of each and every factor" is not required where the ALJ's

reasoning and adherence to the regulation are clear.  *Atwater v. Astrue*, 512 F. App'x 67,

70 (2d Cir. 2013) (summary order) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004)).  Indeed, if the Commissioner has provided "good reasons" for its weight

assignment and a "searching review of the record assures us that the substance of the

treating physician rule was not traversed," the error is harmless.  *Estrella*, 925 F.3d at 96.

(internal citations omitted).

        Here, although the ALJ did not explicitly address each factor for all four medical records,

the ALJ did discuss several factors and provide "good reasons" for her weight assignment.

Notably, the ALJ explains that the records were not consistent with or sufficiently supported by

other substantial clinical and longitudinal evidence in the record.  (R. 689).  The ALJ notes that

no other evidence identifies "marked or extreme limitations,"[13] and then describes record

evidence that the "claimant continued to show a number of good mental status examination

results during her mental health treatment."  (*Id*).  For example, the ALJ mentions how Plaintiff

"learned to manage her feelings," "[was] communicating better with her mother," "[did not

---

[13] This is not a mischaracterization of the record, as explained in Section IV(c).

engage in] any hostile, aggressive, violent, or uncooperative behavior…despite the claimant's social isolation, social withdrawal, and panic attacks," "[shows] no evidence of borderline intellectual functioning," and "was generally able to care for her personal needs, including dressing, bathing and grooming herself." (R. 688 – 690).  Significantly, the ALJ adds that Plaintiff "was also able to perform some household chores, graduate high school, and begin attending college." (*Id*).  Also, the ALJ mentions that Exhibits 12F and 13F were both signed by Kelly Marin LP and addresses the extent and nature of Plaintiff's treating relationship. (R. 689). The ALJ explains that Marin is a "mental health clinician" and that Plaintiff had been attending weekly sessions at her facility since July of 2015, and working with Marin specifically since July of 2017.  (*Id.*)

In addition to referring to the factors above, the ALJ also explained that these medical records were vague.  An ALJ may conclude that a treating physician's opinion is only entitled to limited weight because it is "too vague to be of much help."  *See Schillo*, 31 F.4th at 76.  ALJ Singh states that these records were vague because they "failed to adequately define the claimant's specific functional limitations." (R. 689).  In essence, the records address Plaintiff's functional limitations by saying that she has a marked impairment in social relationships that impact daily living. (R. 689).  But without more specifics regarding how Plaintiff's social functioning is impaired, the records' utility is limited and the ALJ had good reason for only assigning them "little" and "some" weight.

The ALJ's thorough discussion of why the records were inconsistent with and not sufficiently supported by substantial medical evidence, paired with the ALJ's explanation that the records were vague because they "failed to adequately define the claimant's specific

functional limitations," assure me that the substance of the applicable regulations was not traversed, and any error was harmless.  (R. 689).

Finally, any potential error by the ALJ in assessing the medical records from Plaintiff's treating sources was also harmless because the RFC articulated by the ALJ already accounted for marked limitations in social functioning.  The ALJ determined that Plaintiff had the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to understanding, remembering, and carrying out simple, routine, repetitive, non-complex tasks, with occasional contact with supervisors, coworkers, and the general public. She was limited to a low stress environment, defined as occasional decision-making, judgment, and changes in work setting.

(R. 686).  Courts have upheld similar RFC findings when the Plaintiff was found to have social limitations.  *Regina R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-04260-GRJ, 2022 WL 17095048, at *4 (S.D.N.Y. Nov. 21, 2022) (holding that RFC involving limited interaction with the public incorporates "moderate, if not greater" findings of limitations interacting with others); *Juliana Marie M. v. Comm'r of Soc. Sec*, No. 1:18-CV-1421 (ATB), 2019 WL 6829044, at *10 (N.D.N.Y. Dec. 13, 2019) (holding that ALJ adequately accounted for marked social limitations by finding that Plaintiff had RFC to have only occasional contact with supervisors, co-workers, and the public).

### C. The ALJ Did Not Mischaracterize Evidence.

Plaintiff also argues that the ALJ committed a "gross misstatement of the evidence" by stating that the "vague" statements made by Plaintiff's treating sources were inconsistent with the record, because the record does not contain "any marked …limitations."  (ECF No. 18 at 17

(quoting R. 689)).[14]  Plaintiff then emphasizes that "[t]he ALJ, cited in the paragraph immediately before this finding to records from treating sources finding 'Tetrice continues to meet SED criteria due to **marked** impairment in social relationships…'"  (ECF No. 18 at 17 (quoting R. 645)).  In other words, the ALJ said that the vague medical statements were inconsistent with the record, because the record does not contain any marked impairments. And Plaintiff now argues that this was a mischaracterization of the record because the vague statements themselves identify a marked impairment.

The Court finds Plaintiff's argument unpersuasive.  When read in the proper context, the ALJ's decision communicated that these vague statements from Plaintiff's treating sources were inconsistent with the record because the record does not contain any *other* marked impairments aside from those contained in the vague records.  (R. 689).  As noted above, substantial evidence supports the ALJ's overall finding that Plaintiff was not disabled during the relevant time period. The record indicates that Plaintiff never needed to repeat a grade and did not have any failing grades, was generally able to care for her personal needs, performed certain chores at home, graduated from high school, and began attending college.  (R. 666, 690).  Nor does Plaintiff identify any medical opinion (other than those identified as vague by the ALJ) stating that Plaintiff had a marked impairment.

Regardless, the ALJ is entitled to make an RFC finding that is consistent with the record as a whole and supported by substantial evidence, even if it does not perfectly correspond with any of the medical source opinions.  *Schillo,* 31 F.4[th] at 78 ("…the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record so long as it is supported by

---

[14] Plaintiff argues that this mischaracterization was compounded because, during cross-examination of the vocational expert, the expert testified that a person who could not interact occasionally with supervisors would not be employable.  ECF No. 18 at 17.  However, no medical or non-medical source opined that Plaintiff could not occasionally interact with supervisors.

substantial evidence").  In fact, even where a treating source has concluded that a claimant has marked difficulties in social functioning, the Second Circuit has approved a similar RFC finding that the claimant could still perform simple, routine, low-stress, and unskilled tasks and have no more than minimal contact with co-workers, supervisors, and the public.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff's motion (ECF No. 17) is **DENIED** and the Commissioner's motion (ECF No. 19) is **GRANTED**.

The Clerk of Court is respectfully directed to terminate ECF Nos. 17 and 19 and enter judgment in favor of the Commissioner.

**SO ORDERED.**

DATED:        White Plains, New York
              September 27, 2023

_____
VICTORIA REZNIK
United States Magistrate Judge

17